# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**PETER STOJANOVIC,**

        **Plaintiff,**

        **-vs-**                      **Case No. 06-C-0318**

**ROBERT HUMPHREYS,**

        **Defendant.**

## DECISION AND ORDER

Plaintiff Peter Stojanovic, who is currently incarcerated at Racine Correctional Institution, lodged this pro se civil rights action pursuant to 42 U.S.C. § 1983. This matter comes before the court upon the plaintiff's petition to proceed *in forma pauperis*.

Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiff is required to pay the statutory filing fee of $250.00 for this action.[1] If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed *in forma pauperis*. To proceed with an action *in forma pauperis*, the prisoner must complete a petition and affidavit to proceed *in forma pauperis* and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee

---

[1] The plaintiff filed his complaint prior to April 9, 2006, when the filing fee for civil actions in the Eastern District of Wisconsin increased to $350.00.

of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.[2]

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. The prisoner has been assessed and paid an initial partial filing fee of $11.14. Thus, the plaintiff shall be permitted to proceed *in forma pauperis*.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully

---

[2] In no event will a prisoner be prohibited from bringing a civil action because he or she has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).

2

construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)

3

(quoting *Conley*, 355 U.S. at 47); *see also Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004) (no heightened pleading requirement for *pro se* prisoner civil rights complaint). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Thomson*, 362 F.3d at 970.

The plaintiff was incarcerated at Racine Correctional Institution (RCI) at all times relevant. (Complaint [Compl.] at 1).[3] Defendant Robert Humphreys is the warden of RCI. *Id.* at 2.

In September, 2005, Unit Manager Marco Tejeda (who is not a named defendant) called the plaintiff into his office and informed him that the plaintiff's daughter and niece "were being removed" from his visiting list. *Id.* at 4. Moreover, the plaintiff would no longer be allowed to "correspond" with his daughter and niece. *Id.* When the plaintiff asked why he would no longer be allowed to see his daughter and niece, Tejeda told him that it was "because of a blanket policy of removing minors from all sex offenders visiting lists." *Id.* Tejeda also told the plaintiff that he was not qualified to review the decision, "so after seven years of visits, several at RCI, the minors were removed" from the plaintiff's visitation list. *Id.*

The plaintiff claims that he has "court ordered visitation" and that the defendants discriminated against him by denying him visitation with his daughter and niece.

---

[3]The complaint, which starts on page three, is five pages long. In the interest of simplicity, the court will refer to the complaint as it is numbered in the Electronic Case Filing (ECF) system, with the first page of the complaint being page number 1 and the last page of the complaint being page number 5.

4

*Id*. He also claims that the defendant's policy constitutes cruel and unusual punishment. *Id*. For relief, he requests that his daughter and niece be "re-instated" on his visiting list. *Id*. at 5. In addition, he asks that the court order RCI to review and revise their visitation policy. *Id*.

**1.      Fourteenth Amendment Claims**

The plaintiff claims that the defendant's policy of blocking his daughter and niece from his visiting list is discriminatory. To comply with equal protection, governmental entities are generally required to treat all similarly-situated persons in a similar manner. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In equal protection analysis, the level of scrutiny the court applies to a government action varies depending upon whether the plaintiff is a member of a suspect class, or whether a fundamental right is at stake. *Id*. Prisoners do not constitute a suspect class and thus state actions concerning prisoners as a group are generally not entitled to heightened scrutiny. *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990).

However, "class of one" equal protection claims arise without regard to protected-class status where the plaintiff "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Seventh Circuit, "class of one" claims under § 1983 require the plaintiff to "present evidence that the defendant deliberately sought to deprive him of the equal protection of the law for reasons of a personal

5

nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). A class of one plaintiff must show that "the cause of the differential treatment of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendants." *Id*.

In this case, the plaintiff avers that the defendants violated his equal protection rights and that he was treated differently from other similarly situated prisoners. Therefore, he will be allowed to proceed on an equal protection claim.

Next, the plaintiff claims that he has court ordered visitation rights. It is unclear whether this applies to his daughter, his niece, or both. Regardless, the court construes the plaintiff's assertion as raising a due process argument. To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. *See Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). A liberty interest exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

Although the Due Process Clause does not independently protect an inmate's access to a particular visitor, a state may create a liberty interest in such visitation. *Sandin,* 515 U.S. at 483-84*; Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 484 (1989). Whether state law creates a protected liberty interest depends on whether the regulations contain explicitly mandatory language, i.e., specific directions to the decisionmaker that if

6

the regulations' substantive predicates are present, a particular outcome must follow. *Id*. at 463 (internal citations omitted).

At this stage of the proceedings, it is unclear Wisconsin law confers upon the plaintiff a protected interest in visiting with his daughter and niece. However, district courts have been instructed to construe such doubts in favor of *pro se* plaintiffs. *Jenkins,* 395 U.S. at 421. Thus, the plaintiff may proceed on a due process claim.

**2.        Eighth Amendment Claim**

The plaintiff claims that the defendant's policy of denying him visitations with his daughter and niece rises to the level of cruel and unusual punishment. To make out an Eighth Amendment claim based on prison conditions, an inmate must show that he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An objectively, sufficiently serious injury is one that deprives the inmate "the minimal civilized measure of life's necessities. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Only extreme deprivations will support an Eighth Amendment claim. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997).

Denial of contact visitation, however, does not violate the Eighth Amendment. *See Nkrumah v. Clark*, 1992 U.S. App. LEXIS 25067 (7th Cir. Sept. 24, 1992)("denial of

7

contact visitation simply does not amount to the infliction of pain.")(internal citations omitted). Thus, the plaintiff has not alleged a sufficiently serious injury. Accordingly, he has failed to state an Eighth Amendment claim.

**3.      Official Capacity**

As a final matter, the court notes that the plaintiff has not indicated whether he is suing defendant Humphreys in his individual or official capacity. A suit against a state official in his or her official capacity is a suit against the official's office. As such, it is not different than a suit against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Official capacity claims seeking injunctive relief are permissible under § 1983. *Id*. at 71 n.10. Such claims require that the entity's policy or custom have played a part in the constitutional violation. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). As discussed, the plaintiff is challenging the constitutionality of RCI's visitation policy. Further, he has requested injunctive relief. Thus, the court finds that the plaintiff may proceed on an official capacity claim against defendant Humphreys.

In sum, the plaintiff may proceed on his equal protection and due process claims as well an official capacity claim. To the extent he seeks to assert a cause of action based on the Eighth Amendment, his claim is dismissed.

**ORDER**

**IT IS THEREFORE ORDERED** that the motion for leave to proceed *in forma pauperis* (Doc. # 2) is **granted.**

8

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the defendant pursuant to Federal Rule of Civil Procedure 4.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $238.86 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or

9

typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 6th day of October, 2006.

**SO ORDERED,**

s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA
Chief Judge**