# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

PETER STOJANOVIC,

               Plaintiff,

        v.                                      Case No. 06-C-0318

ROBERT HUMPHREYS,

               Defendant.

## DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Peter Stojanovic, a state prisoner at all times relevant, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. This matter comes before the court on the defendant's motion for summary judgment.

## I. BACKGROUND

On March 14, 2006, the plaintiff filed a § 1983 complaint against defendant Robert Humphreys. The court subsequently screened the complaint and determined that the plaintiff's allegation that he was denied visitation with his daughter and niece stated claims under the Equal Protection Clause and the Due Process Clause. Additionally, the plaintiff was allowed to pursue an official capacity claim based on Racine Correctional Institution's visitation policy. The defendant filed a motion for summary judgment on May 11, 2007, which is now fully briefed and ready for resolution.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id*.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson,* 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id*. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id*. at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*,

2

477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

## II. RELEVANT UNDISPUTED FACTS [1]

The plaintiff, a state prisoner, was incarcerated at Racine Correctional Institution (RCI) at all times relevant. (Complaint [Compl.] at 1). Defendant Robert Humphreys has been employed as the warden of RCI since December 25, 2005. (Affidavit of Robert Humphreys [Humphreys Aff.] ¶¶ 2; 7). Prior to December 25, 2005, Quala Champagne was the warden of RCI. (Affidavit of Marco Tejeda [Tejeda Aff.] ¶ 12).

All correctional institutions under the Wisconsin Department of Corrections (DOC), including RCI, are required to establish written policies and procedures regarding visitation. (Tejeda Aff. ¶ 6). RCI's policy, known as Procedure Number 2705, was enacted on November 21, 2005. (Humphreys Aff. ¶ 8; Tejeda Aff. Ex. 1001). The goal of Procedure Number 2705 is to establish uniform guidelines for the preparation and maintenance of inmate visiting lists and to provide an effective visiting program by establishing positive social relationships with relatives and friends, taking into consideration the security and safety needs of the institution. (Tejeda Aff. ¶ 8).

---

[1]The facts in this section are derived from the defendant's proposed findings of fact and affidavits, to the extent they are undisputed, and the plaintiff's affidavit and verified complaint, to the extent they are undisputed. *See* Civil L.R. 56.2 (E.D. Wis.).

Each RCI inmate must have their visitor's list approved to ensure that it meets the requirements set forth in the Wisconsin Administrative Code and the institution's written procedures. (Tejeda Aff. ¶ 9). In determining whether a person is appropriate for placement on an inmate's visiting list, the warden may take the following factors into consideration: (1) whether the inmate provided false, incorrect or incomplete information; (2) whether the proposed visitor provided false, incorrect or incomplete information; (3) whether there is a signed and dated approval of a non-incarcerated custodial parent or legal guardian for a proposed visitor less than 18 years of age or a court order directing the visit; (4) whether the visitor has attempted to bring contraband into the institution or the visitor otherwise poses a threat to the safety and security of visitors, staff, inmates or the institution; (5) whether the inmate's reintegration into the community or rehabilitation would be hindered; (6) whether the inmate's offense history indicates there may be a problem with the proposed visitation; (7) whether the proposed visitor may be subjected to victimization; (8) whether the proposed visitor has been incarcerated in the past 12 months; (9) whether a visitor was approved by mistake or based on inadequate information; and (10) whether the proposed visitor is a current or former employee, volunteer or contract agent. (Tejeda Aff. ¶ 10; Ex. 1001).

**Review of the Plaintiff's Visitor List**

In September, 2005, the plaintiff's visitor's list was reviewed by RCI psychological services. (Tejeda Aff. ¶ 16). Based on the information in his prison file, the social worker became concerned about the plaintiff's escalating assaultive behavior toward women, which included armed robbery, false imprisonment and attempted sexual assault. *Id.* Of further concern was the fact that the plaintiff was not currently participating in Sex Offender Treatment Program (SOT) to help him deal with the issues related to his sex offenses. (Tejeda Aff. ¶ 17).

4

Thereafter, Unit Manager Marco Tejeda called the plaintiff into his office and informed him that his daughter and niece were being removed from his visitor's list. (Compl. at 4). The plaintiff began participation in SOT on October 2, 2006. (Tejeda Aff. ¶ 20). Around this time, the plaintiff's daughter and niece were placed back on his visitor's list. (Tejeda Aff. ¶ 21; Ex. 1003). However, for reasons that are in dispute, the plaintiff's daughter and niece were again removed from his visitor's list in March, 2007. (Tejeda Aff. ¶ 22). Currently, the plaintiff is not allowed to have any minor visitors, including his daughter and niece. (Tejeda Aff. ¶ 23).[2]

**Plaintiff's Use of the Inmate Complaint Review System**

On September 27, 2005, the plaintiff filed Inmate Complaint Number RCI-2005-29608 complaining that his daughter and niece were removed from his visiting list. (Affidavit of Brenda LaBelle [LaBelle Aff.] ¶ 14). The complaint was dismissed on November 1, 2005. (LaBelle Aff. ¶ 15). The plaintiff appealed and the Corrections Complaint Examiner (CCE) recommended that the appeal be dismissed as untimely. (LaBelle Aff. ¶ 18). On November 17, 2005, the Office of the Secretary accepted this recommendation. (LaBelle Aff. ¶ 19).

On September 27, 2006, the plaintiff filed Inmate Complaint Number RCI-2006-28497

---

[2]Although the plaintiff's daughter and niece were reinstated and then removed from his visitor's list after he filed this action, and he did not file an amended pleading to include these events, there is no requirement that a formal amended pleading be filed where the parties are in mutual assent. *See, e.g., Creative Demos, Inc. v. Wal-Mart Stores, Inc.*, 142 F.3d 367, 371-72 (7th Cir. 1998)(approving district court's amendment to conform to "what the parties were arguing about at trial, although they did not use the magic words"); *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)("Even without a formal amendment, 'a district court may amend the pleadings merely by entering findings on the unpleaded issues.'"); *Southwestern Stationery and Bank Supply, Inc. v. Harris Corp.*, 624 F.2d 168, 171 (10th Cir. 1980)("When evidence is not objected to, a formal amendment to the pleadings is normally not necessary."). Inasmuch as the defendant has introduced evidence about events that occurred subsequent to the filing of the complaint, and the plaintiff does not object, the court will consider these facts when addressing the defendant's motion for summary judgment.

5

complaining that his daughter and niece were wrongfully removed from his visitor's list. (LaBelle Aff. ¶ 20). The complaint was rejected the next day for containing issues that were previously addressed. (LaBelle Aff. ¶ 21). The plaintiff did not appeal the rejection of Inmate Complaint RCI-2006-28497. (LaBelle Aff. ¶ 23).

On October 25, 2005, the plaintiff filed Inmate Complaint Number RCI-2005-32766 complaining that his daughter and his niece were wrongfully removed from his visitor's list. (LaBelle Aff. ¶ 24). On October 28, 2005, the complaint was rejected for containing issues that were previously addressed. (LaBelle Aff. ¶ 25). The plaintiff did not appeal this rejection. (LaBelle Aff. ¶ 27).

On November 8, 2005, the plaintiff filed Inmate Complaint Number RCI-2005-34338 complaining that his daughter and his niece were wrongfully removed from his visitor's list. (LaBelle Aff. ¶ 28). The complaint was dismissed on November 11, 2005, because the issues raised had been previously addressed. (LaBelle Aff. ¶ 29). The plaintiff did not appeal this rejection. (LaBelle Aff. ¶ 31).

On November 15, 2005, the plaintiff filed Inmate Complaint Number RCI-2005-35103 complaining that he was being discriminated against based on his sexual offense conviction. (LaBelle Aff. ¶ 32). The complaint was rejected on November 17, 2005, because the issue had been previously addressed. (LaBelle Aff. ¶ 33). The plaintiff's appeal of this decision was rejected as untimely on November 29, 2005. (LaBelle Aff. ¶ 36).

On December 6, 2005, the plaintiff filed Inmate Complaint Number RCI-2005-37126 complaining that he was being discriminated against based on his sexual offense conviction. (LaBelle Aff. ¶ 37). That same day, the complaint was rejected because it raised issues that were

6

previously addressed. (LaBelle Aff. ¶ 38). The plaintiff appealed and on December 15, 2005, the rejection of Inmate Complaint Number RCI-2005-37126 was affirmed. (LaBelle Aff. ¶ 40).

On December 13, 2005, the plaintiff filed Inmate Complaint Number RCI-2005-38013 complaining that Marco Tejeda removed his daughter and niece from his visitor's list. (LaBelle Aff. ¶ 41). The plaintiff's complaint was rejected on December 22, 2005, for raising an issue that was previously addressed. (LaBelle Aff. ¶ 42). The plaintiff did not appeal this decision. (LaBelle Aff. ¶ 44).

## IV. DISCUSSION

Defendant Humphreys asserts the following defenses in support of his motion for summary judgment: (1) the plaintiff failed to exhaust his administrative remedies; (2) defendant Humphreys was not personally involved in the alleged wrongdoing; (3) RCI's visiting policy is not unconstitutional; and (4) defendant Humphreys is entitled to qualified immunity.

### A.    Exhaustion

Defendant Humphreys claims that the plaintiff failed to properly exhaust any inmate complaint concerning his visitor's list. The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)a.

Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to Wisconsin inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006) (holding that prisoner does not satisfy exhaustion requirement by filing untimely or otherwise procedurally defective administrative grievances or appeals). In Wisconsin, an inmate must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) and 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) and 310.11(11). An inmate may appeal a rejected complaint within 10 days only to the appropriate reviewing authority who shall only review the basis for the rejection of the complaint. Wis. Admin. Code § DOC 310.11(6). The reviewing authority's decision is final. *Id*.

8

### Inmate Complaints RCI-2006-28497, RCI-2005-32766, RCI-2005-38013 and RCI-2005-34338

In the present case, the evidence on file reveals that the plaintiff failed to appeal the rejection of the following Inmate Complaints: (1) RCI-2006-28497; (2) RCI-2005-32766; (3) RCI-2005-38013; and (4) RCI-2005-34338. Notably, the plaintiff asserts that he "appealed every adverse decision." (Pl.'s Br. at 3). However, he has offered no admissible evidence to support this claim. It is well-settled that such "conclusory allegations...without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002)(citing *Patterson v. Chi. Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998)).

Exhaustion requires a prisoner to "take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2001). In Wisconsin, to exhaust his administrative remedies, an inmate dissatisfied with an ICE's decision is required to appeal the decision to the appropriate reviewing authority. *See* Wis. Admin. Code § DOC 310.11(6). Inasmuch as the plaintiff failed to take this step with respect to Inmate Complaints RCI-2006-2847, RCI-2005-32766, RCI-2005-38013 and RCI-2005-34338, he failed to exhaust these inmate complaints and the claims set forth therein.

### Inmate Complaints RCI-2005-35103 and RCI-2005-29608

It is undisputed that the plaintiff failed to timely appeal the rejection of Inmate Complaints RCI-2005-35103 and RCI-2005-29608. The plaintiff is required to file inmate complaints and appeals in the time and manner set forth in the Wisconsin Administrative Code. *See Riccardo v. Rausch*, 375 F.3d 521, 253 (7th Cir. 2004)("Prisoners must follow state rules about the time and content of grievances."). In other words, he must "proper[ly] exhaust" his administrative remedies. *Woodford*, 126 S. Ct. at 2382.

9

The plaintiff argues that Inmate Complaint RCI-2005-29608 was late because he did not receive a copy of the decision on the day it was issued. (Pl.'s Br. at 3). Rather, he had to wait for it to arrive in the mail, which is not processed on Friday, Saturday or Sunday. *Id.* As a result, his appeal of the rejection of Inmate Complaint RCI-2005-29608 was untimely. *Id.*

"[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). On the other hand, prison officials cannot exploit the exhaustion requirement by failing to respond to grievances. *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). Inasmuch as it is the defendant's burden to plead and prove exhaustion, *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002), and there is conflicting evidence as to whether the plaintiff was timely notified that Inmate Complaint RCI-2005-29608 was dismissed, the court declines to dismiss this claim as unexhausted. However, there is no such indication that prison officials were to blame for the untimely appeal of RCI-2005-35103. Therefore, it will be dismissed as unexhausted.

**Inmate Complaint RCI-2005-37126**

It is undisputed the plaintiff filed Inmate Complaint Number RCI-2005-37126 complaining that he was being discriminated against on the basis of his sexual offense conviction and that minors were wrongfully removed from his list. On December 6, 2005, the complaint was rejected because it raised issues that were previously addressed. The plaintiff timely appealed and the rejection of Inmate Complaint Number RCI-2005-37126 was affirmed on December 15, 2005. Accordingly, the plaintiff exhausted his administrative remedies with respect to the claims contained in this complaint. *See* Wis. Admin. Code § DOC 310.11(6).

10

In sum, the plaintiff failed to exhaust his administrative remedies as to Inmate Complaints RCI-2005-35103, RCI-2006-28497, RCI-2005-32766, RCI-2005-34338 and RCI-2005-38013. Therefore, to the extent the plaintiff seeks to pursue claims set forth in these complaints, his claims are dismissed as unexhausted. However, the plaintiff exhausted Inmate Complaints RCI-2005-37126 and RCI-2005-29608, which allege that the plaintiff's daughter and niece were wrongfully removed from his visitor's list and that he was discriminated against on the basis of his criminal history.

**B.    Personal Involvement**

Defendant Humphreys asserts that he was not personally involved in the decision to remove the plaintiff's daughter and niece from his visitor's list. Section 1983 does not create a claim based on collective or vicarious responsibility. *See Pacelli v. deVito*, 972 F.2d 871, 875 (7th Cir. 1992). To establish liability under 42 U.S.C. § 1983, a plaintiff must prove that each defendant was in some way personally responsible for the alleged deprivation, and that the deprivations occurred with the knowledge and consent of that defendant. *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994); *Smith v. Rowe*, 761 F.2d 360, 368-69 (7th Cir. 1985). An official is personally involved if: a) he or she participates directly in the constitutional deprivation; b) acts or fails to act with reckless disregard of plaintiff's constitutional rights; or c) the conduct that deprived plaintiff of his constitutional rights occurred at the official's direction or with his or her knowledge and consent. *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986); *Smith*, 761 F.2d at 369; *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

In the present case, it is undisputed that the plaintiff's daughter and niece were removed from his visitor's list on September 20, 2005. At this time, defendant Humphreys was not employed at RCI. Rather, the evidence on file demonstrates that the plaintiff's daughter and niece were removed

11

from his visitor's list at the direction of former warden Quala Champagne. (*See* Def.'s Ex. 1004 at 1, 16).

Notably, the plaintiff avers that defendant Humphreys was personally involved because he denied the inmate complaints the plaintiff filed after he became warden on December 25, 2005. In support of his assertion, the plaintiff has provided a copy of two inmate complaints that were denied by defendant Humphreys in February and April, 2006. (*See* Pl.'s Exhibits 1 & 2). Although the subject of these complaints is described as "visiting list," the plaintiff has not shown what specific issues he raised in these complaints. *See id.* Therefore, the court is unable to determine that defendant Humphreys was personally involved in the alleged constitutional violations on the basis of this evidence.

In sum, the evidence on file does not support a finding that defendant Humphreys was personally involved in the decision to remove the plaintiff's daughter and niece from his visiting list. Therefore, the plaintiff's personal capacity claims against defendant Humphreys will be dismissed for lack of personal involvement. *See Pacelli*, 972 F.2d at 875.

However, this does not end the court's inquiry into the plaintiff's visitor's list claim because he has stated an official capacity claim against defendant Humphreys based on his enforcement of RCI's visitation policy. The court will now address this claim.

## C.     **Official Capacity Claim**

The plaintiff avers that the enforcement of RCI's visitation policy violates his due process and equal protection rights. In regard to official capacity claims, a suit against a state official in his or her official capacity is a suit against the official's office. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). Therefore, it is not different than a suit against the state itself. *Id.* Under § 1983,

12

a governmental unit cannot be held liable unless the deprivation of constitutional rights was caused by a policy or custom. *Kujawski v. Board of Comm'rs.*, 183 F.3d 734, 737 (7th Cir. 1999). An unconstitutional policy can be shown by: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a "custom or usage" with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Therefore, the court will now address the merits of the plaintiff's constitutional claims.

### 1.    Due Process

The plaintiff avers that denial of visitation with his daughter and niece violates his due process rights.[3]    "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To establish a procedural due process violation, a prisoner must first demonstrate that the state deprived him of a liberty or property interest created by state law or the Due Process Clause itself. *See Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). In general, the Due Process Clause does not independently protect an inmate's access to a particular visitor. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 484 (1989)(holding that the denial of prison access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence[.]"). However, "[p]arents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close

---

[3]The court notes that the plaintiff attempts to assert a similar claim against Marco Tejeda. For example, he claims that Tejeda violated Wisconsin Administrative Code § DOC 309.08 when he removed the plaintiff's daughter and niece from his visitor's list. However, Tejeda has not been named as a defendant in this lawsuit. Therefore, the court will disregard this allegation.

13

relations with their children." *Hodgson v. Minnesota*, 497 U.S. 417, 483 (1990)(Scalia, J., concurring in part and dissenting in part); *see also Harris v. Donahue*, 175 Fed. Appx. 746, *4 (7th Cir. Mar. 23, 2006)(holding that inmates have a protected liberty interest in seeing their children).

Based on this, the court finds that the plaintiff had a protected liberty interest in visitation with his daughter. *See id.* It is unclear whether this right also extends to his niece. *See, e.g., Kentucky Dep't of Corr.,* 490 U.S. at 484. Notably, the plaintiff avers that he has court-ordered visitation rights with his daughter and niece. (*See* Pl.'s Letter dated Mar. 17, 2008). Review of the "Order for Visitation" he has submitted reveals that it does not mention his niece. Regardless, even if the plaintiff has a protected interest in visiting with his daughter *and* his niece, the defendants have shown that their removal from the plaintiff's visitor's list does not run afoul of the Due Process Clause.

The Supreme Court has recognized that "the very object of imprisonment is confinement" and "many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Accordingly, prisoners do not retain rights that are inconsistent with proper incarceration, and "freedom of association is among the rights least compatible with incarceration." *Id.* As a result, a prison may impose reasonable visitation restrictions upon its inmates. *Id.*

When a prison policy, such as RCI's Procedure Number 2705, impinges on a prisoner's constitutional rights, courts are to assess whether it is reasonable in light of legitimate penological interests. *Id.* at 132 (citing *Turner v. Safley,* 482 U.S. 78, 89-91 (1987)). There are four factors to consider when assessing the reasonableness of a challenged policy: (1) whether a rational connection exists between the prison policy and a legitimate governmental interest; (2) whether alternative

14

means of exercising the right are available; (3) the impact accommodation of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready alternatives exist that would accommodate the prisoner's rights. *Turner*, 482 U.S. at 89-91.

In the present case, it is undisputed that the plaintiff has a pattern of assaultive behavior toward women, including armed robbery, false imprisonment and attempted sexual assault. For at least part of his incarceration at RCI, the plaintiff refused to participate in SOT. Because of this, RCI prison officials reviewed his visitor's list under RCI Procedure 2705 and determined that his daughter and niece should be removed.

The defendant avers that the plaintiff's daughter and niece were removed from his visiting list "due to their potential for victimization." (*See* Tejeda Aff. ¶ 23). The defendant further asserts that preventing the plaintiff from interacting with minors will "help him deal with issues related to his sexual offense." (*See* Tejeda Aff. ¶ 18). Protecting children from harm is a legitimate state interest. *See Overton*, 539 U.S. at 170; *see also Block v. Rutherford*, 468 U.S. 576, 586 (1984). Similarly, the rehabilitation of prisoners is a legitimate penological interest. *See Wirsching v. Colorado*, 360 F.3d 1191, 1200-01 (10th Cir. 2004)(holding that the state's asserted interests in protecting children and promoting the rehabilitation of offenders were rationally related to the institution's restriction on visitors).

The plaintiff claims that the asserted interest in protecting children is not valid because his daughter and niece were not the victims of his sex-related offenses. (Pl.'s Aff. ¶ 4). He also argues that prison officials should not be concerned about providing security for minors because there are multiple forms of surveillance at RCI. (Pl.'s Br. at 1). These arguments ignore the substantial deference courts must afford "to the professional judgment of prison administrators, who bear a

15

significant responsibility for defining the legitimate goals of a correctional system and for determining the most appropriate means to accomplish them." *Overton*, 123 S. Ct. at 2167. Here, the defendant has offered evidence that a social worker reviewed the plaintiff's file and was concerned about him contacting two minor visitors given his criminal history. (*See* Tejeda Aff. ¶ 16). Additionally, the defendant has submitted evidence that the plaintiff was not participating in SOT at the time his daughter and niece were removed from his visitor's list in September, 2005. (*See* Tejeda Aff. ¶ 22). Therefore, the plaintiff has failed to show that the asserted state interests are invalid.

Once it has been determined that a regulation bears a rational relationship to a legitimate state interest, the court should examine whether there is an alternative way for the plaintiff to exercise the protected right. *See Turner*, 482 U.S. at 89-91. In the present case, RCI's policy does not specifically prohibit the plaintiff from communicating with his daughter and niece in writing and by telephone. (*See* Def.'s Ex. 1001). The court notes that the plaintiff makes a passing assertion that he is not allowed to "correspond" with his daughter and niece. (Compl. at 4). It would appear from this statement that the plaintiff may be prohibited from contacting his daughter and niece in writing, although it is unclear. However, this potential ambiguity does not establish that the defendant's policy is unconstitutional because "the burden...is not on the State to prove the validity of the prison regulation but on the prisoner to disprove it." *Overton*, 123 S Ct. at 2168. As such, the plaintiff's failure to elaborate on the extensiveness of the challenged restriction means that he cannot satisfy this burden. *See id.* Moreover, to the extent the plaintiff is only allowed to communicate with his daughter and niece via telephone, it is irrelevant that this is not his preferred means of

16

communication.  As the Supreme Court has explained, alternatives "need not be ideal...they need only be available." *Overton*, 123 S. Ct. at 2169.

The next factor to be considered in assessing the reasonableness of a regulation is the impact accommodation of the plaintiff's right to visit with his daughter and niece will have on others.  *See Turner*, 482 U.S. at 89-90.  As discussed, *supra*, RCI's Procedure 2705 was enacted to establish uniform guidelines regarding inmate visiting lists and to provide an effective visiting program by establishing positive social relationships, subject to the security and safety needs of the institution. (Tejeda Aff. ¶ 8).  Additionally, prison officials determined that the plaintiff's minor visitors are subject to possible victimization.  Based on this, the court finds that the plaintiff's right to visit with his daughter and niece can only be exercised at the expense of others.  Where such a trade-off is necessary, prison administrators must be given wide-ranging deference in the operation of prisons. *See Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979)("Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Finally, the lack of workable alternatives is evidence of the reasonableness of the restrictions imposed.  *See Turner*, 482 U.S. at 89-90.  Here, the plaintiff has not offered any alternatives that would fully accommodate his asserted right at *de minimus* costs to the interests that gave rise to the removal of his daughter and niece from his visitor's list.

In sum, the defendant has demonstrated that RCI's policy is reasonably related to valid state interests and, therefore, it does not violate the plaintiff's rights under the Due Process Clause.  Thus, the defendant's motion for summary judgment will be granted as to this claim.

17

### 2. Equal Protection

The plaintiff claims that RCI's policy of blocking his daughter and niece from his visitor's list discriminates against him on the basis of his status as a convicted sex offender. To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner. *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Where the circumstances do not involve a suspect classification such as race or gender, an inmate who challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation or practice is an exaggerated response to those concerns. *See Caldwell v. Miller*, 790 F.2d 589, 609 (7th Cir. 1986). A prison regulation that treats inmates unequally will be upheld if it is rationally related to a legitimate state interest. *Smith v. City of Chicago*, 457 F.3d 643, 650-51 (7th Cir. 2006); *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000).

In the present case, the parties are in dispute as to whether the plaintiff was treated differently from other inmates. The defendant asserts that the visitor's list of all inmates who had been convicted of sex crimes were reviewed. (Tejeda Aff. ¶ 12). On the other hand, the plaintiff argues that another RCI inmate, one David Pleas, is a convicted child molester who was not required to remove a friend's child from his visitor's list and, moreover, was permitted to visit with this child on several occasions. (Pl.'s Br. at 6).

Review of the defendant's summary judgment materials reveals that he has not responded to the plaintiff's assertion that he was treated differently from inmate Pleas. However, the court notes that, because the plaintiff has not indicated the exact nature of Pleas' conviction(s), the age and sex of Pleas' minor visitor, the time period in which Pleas was permitted to visit with the minor, and

18

whether Pleas has refused to participate in SOT, it is difficult to discern whether Pleas is "similarly situated" for purposes of the Equal Protection Clause.

On the other hand, in evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus.,* 475 U.S. at 587. Thus, for purposes of summary judgment, the court will assume that the plaintiff has satisfied his burden of showing that he was treated differently from another similarly situated inmate. The relevant inquiry, then, is whether this difference in treatment was rationally related to a legitimate state interest. *See Smith*, 457 F.3d at 650-51.

The rational-basis test is a lenient standard; the government's action simply "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and *some* legitimate governmental purpose." *Smith*, 457 F.3d at 652 (emphasis in original). In other words, the plaintiff must demonstrate "governmental action wholly impossible to relate to legitimate governmental objectives." *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). To meet this standard, the plaintiff must show "malicious conduct" on the part of governmental officials, or "conduct that evidences a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Id.* at 573 (internal quotation marks omitted).

The court finds that the same reasoning employed in the earlier discussion of the plaintiff's due process claim shows that there is a legitimate state interest in treating the plaintiff differently from other inmates who have been convicted of sex offenses. Specifically, the plaintiff has a history of escalating assaultive behavior toward women and he was not participating in SOT when his daughter and niece were initially removed from his visitor's list in September, 2005. As such, the defendant is reasonably concerned that there is a potential for victimization of the plaintiff's daughter

19

and niece. *See Overton*, 539 U.S. at 170. Of further concern is the possible impediment of the plaintiff's rehabilitation. *See Wirsching,* 360 F.3d at 1200-01. Moreover, the plaintiff retains other ways in which to exercise his visitation rights, the accommodation of his rights can only be exercised at the expense of others, and he has presented no alternatives that would accommodate his rights at little or no cost to the asserted state interests. *See Turner*, 482 U.S. at 89-90.

Notably, the plaintiff asserts that the defendant acted maliciously and for reasons unrelated to a legitimate state interest because his daughter and niece were reinstated on his list in September, 2006, and then removed again in March, 2007. It is undisputed that when the plaintiff's daughter and niece were removed from his visitor's list in September, 2005, he was not participating in SOT. However, when the plaintiff began participation in SOT his daughter and niece were reinstated on his visitor's list. Based on this, the court is not persuaded that RCI's policy was enforced in a manner unrelated to a legitimate state interest. On the contrary, once the plaintiff began participation in SOT, the asserted interest in his rehabilitation lessened and, therefore, the factors weighing against visitation with minors decreased. *See Turner*, 482 U.S. at 89-90.

The crux of the plaintiff's argument seems to be that his daughter and niece were again removed from his visitor's list in March, 2007, for no apparent reason. The defendant contends that the minors were removed because the plaintiff revealed during SOT that he had two minor rape victims, which is not part of his criminal record. (Tejeda Aff. ¶ 27). Marco Tejeda avers that upon disclosure of this information, the plaintiff's daughter and niece were again removed from his visitor's list. (Tejeda Aff. ¶ 28).

The plaintiff asserts that the defendant cannot prove his claim about the plaintiff having minor rape victims. For purposes of equal protection analysis, however, the defendant does not have to

20

prove that the plaintiff is guilty of this conduct. Rather, the inquiry is whether the defendant's action was "wholly impossible to relate to legitimate governmental objectives." *Patel,* 383 F.3d at 572. In the plaintiff's case, removal of the plaintiff's daughter and niece from his visitor's list in March, 2007, was not wholly impossible to relate to the state interests of protecting them from victimization and aiding the plaintiff's rehabilitation, even if such action was taken as a result of a mistaken belief about the plaintiff's criminal history. Similarly, the defendant's conduct does not evidence "a spiteful effort to 'get' [the plaintiff] for reasons wholly unrelated to any legitimate state objective." *Patel,* 383 F.3d at 572.

In sum, the court finds that RCI's visitation policy is reasonably related to legitimate governmental concerns and the defendant's actions in enforcing the policy were not wholly impossible to relate to achieving these interests. Therefore, the defendant's motion for summary judgment will be granted.[4]

## V. ADDITIONAL MATTERS

The plaintiff has moved for appointment of counsel. As grounds for his request, plaintiff states: (1) he is unable to depose any witnesses; (2) he is unable to attain any affidavits; (3) he is unable to attain a writ of certiorari; (3) he is unable to possess a temporary restraining order; (4) he is in jeopardy of being terminated from SOT; and (5) he is unable to afford counsel. Indigent civil litigants have no absolute constitutional or statutory right to be represented by counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992). This court is authorized

---

[4]The defendant contends that he is entitled to qualified immunity. However, when a court determines in a § 1983 case that no constitutional violation occurred, it is unnecessary to consider whether defendants are entitled to qualified immunity. *Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997)(citing *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 n. 4 (7th Cir. 1995)). Thus, the defendant's argument does not warrant further discussion.

21

to request, but not to compel, an attorney to represent an indigent civil litigant pursuant to 28 U.S.C. § 1915(e)(1). "When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)(rehearing en banc)(citing *Farmer v. Haas*, 990 F.2d 319, 321-22 (7th Cir. 1993)). If plaintiff has made no effort to secure counsel, the motion must ordinarily be denied outright. *Jackson*, 953 F.2d at 1073.

In this case, plaintiff has satisfied the threshold inquiry and provided the names of several attorneys he contacted who have declined to represent him in this matter. However, the defendant's motion for summary judgment has been granted. Therefore, the plaintiff's motion to appoint counsel will be denied as moot.

**IT IS THEREFORE ORDERED** that the defendant's motion for summary judgment (Docket # 30) be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket # 37) be and hereby is **DENIED AS MOOT;**

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED.**

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this <u>25th</u> day of March, 2008.

BY THE COURT:


/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

22